UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT LEE WAYNE WHITLOCK,

    Plaintiff,

    v.      CAUSE NO. 3:22-CV-786-JD

ORNELAS, et al.,

    Defendants.

OPINION AND ORDER

Robert Lee Wayne Whitlock, a prisoner without a lawyer, is proceeding in this case on three Eighth Amendment claims. First, he is proceeding against Sergeant Sonney Ornelas, Lieutenant Terry Beane, and Officer Marquis Benjamin "in their individual capacities for monetary damages for using excessive force against Whitlock on September 26, 2021[.]" ECF 21 at 5. Second, he is proceeding against Officer Branden Shupperd and Officer Brian Jameson "for using cruel and unusual punishment on September 26, 2021," by providing him an inadequate decontamination shower after he was exposed to oleoresin capsicum (OC) spray. *Id.* at 6. Third, he is proceeding against Nurse Lee Ann Ivers "in her individual capacity for monetary damages for deliberate indifference to his serious medical needs on September 26, 2021, in violation of the Eighth Amendment[.]" *Id.*

Nurse Ivers filed a motion for summary judgment. ECF 107. Sgt. Ornelas, Lt. Beane, Officer Benjamin, Officer Shupperd, and Officer Jameson (the "state

defendants") filed a separate motion for summary judgment. ECF 111. Whitlock filed a response to the state defendants' summary judgment motion, but did not file a response to Nurse Ivers' summary judgment motion. ECF 118. Nurse Ivers and the state defendants both filed replies to Whitlock's response. ECF 119, 120. The court extended the deadline for Whitlock to file a response to Nurse Ivers' summary judgment motion and cautioned him that, if he did not file a separate response by the deadline, the court would accept his response to the state defendants' summary judgment motion as a response to both pending summary judgment motions. ECF 121. Whitlock did not file a separate response to Nurse Ivers' summary judgment motion by the deadline, so both summary judgment motions are now ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but

2

rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### *State defendants*

   a. *Sgt. Ornelas, Lt. Beane, and Officer Benjamin*

Whitlock is proceeding against the state defendants on two claims. First, he is proceeding against Sgt. Ornelas, Lt. Beane, and Officer Benjamin "for using excessive force against Whitlock on September 26, 2021, in violation of the Eighth Amendment[.]" ECF 21 at 5.

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In order to survive summary judgment, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Id.* at 322. The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019).

The defendants argue summary judgment is warranted in their favor on this claim because they did not use excessive force against Whitlock. They provide affidavits, in which they attest to the following facts: Around 8:15 a.m. on September 26,

3

2021, the defendants were tasked with removing Whitlock and his cellmate from their cell and checking the cell for contraband. ECF 111-1 at 2. Sgt. Ornelas arrived at Whitlock's cell and ordered Whitlock and his cellmate to submit to mechanical restraints, but both refused. *Id.* Sgt. Ornelas then deployed a short burst of OC spray to gain compliance, at which point both inmates submitted to restraints and were removed from their cell. *Id.* Whitlock was offered a decontamination shower at this time, which he refused, so the correctional officers sat him at a table. ECF 111-2 at 2; ECF 111-3 at 2. At this point, Whitlock began acting hostile and spitting on the ground, so Officer Benjamin placed a spit mask over his face. *Id.* Whitlock then threw himself onto the floor and refused to get up. ECF 111-2 at 2; ECF 111-3 at 3. Lt. Beane and Officer Benjamin tried to pick him up and restrain him, but Whitlock resisted. ECF 111-3 at 3. Once medical personnel arrived, Whitlock stopped resisting, became responsive, and spoke to medical. *Id.* After Whitlock was cleared by medical personnel, he and his cellmate were placed back in their cell and ordered to strip down to their boxers. ECF 111-1 at 3. Whitlock refused this order and Sgt. Ornelas again sprayed him with OC spray. *Id.* Both inmates again submitted to restraints and were taken out of their cell and offered decontamination showers. *Id.*

In his response, Whitlock provides a different version of events: On September 26, 2021, Whitlock was woken up by Sgt. Ornelas for throwing trash out of his tray slot. ECF 118 at 3. Sgt. Ornelas called Whitlock over to the slot to talk, and as Whitlock put his face to the slot Sgt. Ornelas sprayed him in the face with OC spray without any warning and stated "you throw trash you get sprayed bitch." *Id.* Whitlock was "covered

4

in OC spray" and was having trouble breathing while Sgt. Ornelas placed him in restraints. *Id.* Whitlock was walked in front of the showers and was "crying" and "begging" for a shower, but the defendants denied him a shower and walked him to a table in the dayroom. *Id.* Whitlock continued to beg for a shower and stated he was burning and having trouble breathing, so Officer Benjamin took a hairnet and placed it over Whitlock's face to further restrict his breathing. *Id.* at 3-4. Whitlock's vision went black and he passed out, falling face first to the floor. *Id.* at 4. Lt. Beane and Officer Benjamin grabbed Whitlock by the handcuffs and slammed him into a table, slammed him into the floor again, and then placed him in a sitting position at the table. *Id.* After Whitlock regained consciousness, Nurse Ivers arrived and Whitlock requested a shower but Lt. Beane told Nurse Ivers that Whitlock had refused a shower. *Id.* Following the search of Whitlock's cell, Sgt. Ornelas returned Whitlock to his cell and ordered him to strip down to his boxers, but then stated "too slow" and sprayed Whitlock with more OC spray. *Id.* at 5. Whitlock was then taken to the shower and given a brief decontamination shower. *Id.*

      Here, a reasonable jury could credit Whitlock's version of events and conclude the defendants used excessive force against him. Specifically, a reasonable jury could credit Whitlock's testimony and conclude the defendants' alleged conduct of spraying him with OC spray without any warning, refusing to provide him a decontamination shower, placing a hairnet over his face which restricted his breathing and caused him to pass out, and slamming his unconscious body against the table and floor was intended to harm him, not to restore discipline. *See Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir.

5

2009) (force "including mace and tear gas . . . should generally follow adequate warnings"); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (the use of OC spray "may be a necessary prison technique if a prisoner refuses *after adequate warnings* to move from a cell") (emphasis added); *Dodd v. Buckman*, No. 3:20-CV-286-MGG, 2023 WL 2427946, at *2 (N.D. Ind. Mar. 9, 2023) (summary judgment denied because a credibility dispute existed regarding whether the correctional officers unnecessarily slammed an inmate's face into the ground while he was not resisting). Considering the *McCottrell* factors, a reasonable jury crediting Whitlock's testimony could conclude the defendants used more force than was necessary, made no effort to limit the severity of the force, and the force was not needed because of a risk to someone's safety. *See McCottrell*, 933 F.3d at 663. The defendants argue the surveillance footage of the incident disproves Whitlock's version of events, but nothing in the footage directly contradicts Whitlock's version of events. *See* ECF 117. The footage only shows what happened in the dayroom and does not show what took place in Whitlock's cell. And while it is difficult to tell exactly what happens in the footage from the dayroom, a jury could reasonably conclude the footage supports Whitlock's assertions the defendants placed a hairnet over his face until he passed out and then used unnecessary force against him. Accordingly, because a reasonable jury could credit Whitlock's testimony and conclude the defendants used excessive force against him, summary judgment must be denied on this claim.

### b. *Officer Shupperd and Officer Jameson*

Whitlock is proceeding against Officer Shupperd and Officer Jameson for violating his Eighth Amendment rights by providing an inadequate decontamination shower on September 26. Specifically, Whitlock alleged that, after he was sprayed with OC spray the second time by Sgt. Ornelas, he was escorted to the shower by Officer Shupperd and Officer Jameson and given only a short and inadequate decontamination shower.

Officer Shupperd and Officer Jameson argue summary judgment is warranted in their favor because they took reasonable measures to decontaminate Whitlock following Sgt. Ornelas' second application of OC spray, as they provided him a thirty-second decontamination shower, took him to be assessed by medical staff, and gave him clean clothes. ECF 113 at 6-7; ECF 111-4 at 3-4 (attesting that Whitlock was "provided with a change of clothes" and taken to medical staff following the decontamination shower). In his response, Whitlock concedes that Officer Shupperd and Officer Jameson provided him a thirty-second decontamination shower, took him to be assessed by medical staff, and gave him clean clothes following the application of OC spray. Nevertheless, Whitlock argues the decontamination shower provided by Officer Shupperd and Officer Jameson was inadequate because they put his head under hot[1] water for less than one minute without removing his handcuffs and did not give him soap or a towel. ECF 118 at 5.

---

[1] The defendants agree the shower in Whitlock's cellhouse has only one button and only administers warm water. ECF 111-4 at 3.

Here, construing the facts in the light most favorable to Whitlock, no reasonable jury could conclude the decontamination shower provided by Officer Shupperd and Officer Jameson violated his Eighth Amendment rights. Specifically, Whitlock concedes that Officer Shupperd and Officer Jameson took reasonable steps to decontaminate him by giving him a thirty-second decontamination shower, escorting him to medical staff, and providing him with clean clothes. While Whitlock argues the defendants should have removed his handcuffs and provided him with soap and a towel during the shower, this falls far short of the standard to show an Eighth Amendment violation. *See Stone v. Couch*, No. 1:19-CV-01193-TWP-DML, 2021 WL 4247870, at *5-6 (S.D. Ind. Sept. 17, 2021) (correctional officers who provided an inmate with a twenty-three second decontamination shower and escorted him to the medical unit after the application of OC spray did not violate his Eighth Amendment rights, as he "received timely attention to respond to his discomfort with a decontamination shower and a medical assessment" and there is no authority "that establishes that he was entitled to decontamination measures beyond what he received"). Accordingly, because no reasonable jury could conclude the decontamination shower provided by Officer Shupperd and Officer Jameson violated Whitlock's Eighth Amendment rights, summary judgment is warranted in their favor on this claim.

### *Nurse Ivers*

Whitlock is proceeding against Nurse Ivers "for deliberate indifference to his serious medical needs on September 26, 2021, in violation of the Eighth Amendment[.]" ECF 21 at 6.

8

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

9

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. "In the inadequate medical care context, deliberate indifference does not equate to medical malpractice; the Eighth Amendment does not codify common law torts." *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (quotation marks omitted); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[I]t is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference.").

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendant has provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Nurse Ivers argues summary judgment is warranted in her favor because she adequately assessed Whitlock after the state defendants' application of OC spray and

10

determined he did not require any treatment. ECF 109 at 7-8. In support of this argument, Nurse Ivers attests to the following facts:

On September 26, 2021, Nurse Ivers responded to a call from correctional officers to evaluate Whitlock following Sgt. Ornelas' first application of OC spray. ECF 107-1 at 3. Nurse Ivers arrived at the cellhouse, took Whitlock's blood pressure, checked his vital signs, and used a stethoscope to listen to his lungs. *Id.* at 3-4. Whitlock's vital signs including his oxygen saturation were normal and did not give any indication he was having trouble breathing. *Id.* After a five-minute assessment, Nurse Ivers concluded Whitlock was not in any respiratory distress based on his vital signs, her assessment of him, his lung sounds, and her conversation with him. *Id.* She left the housing unit, but returned after Whitlock was sprayed with OC spray the second time. *Id.* at 3. This time, Nurse Ivers performed a one-minute verbal assessment, during which Whitlock was "screaming" about a shower. *Id.* The correctional officers provided Whitlock a shower and then brought him to the medical area to see Nurse Ivers. *Id.* Nurse Ivers assessed Whitlock once more in the medical area and pulled up his medical records before clearing him to return to his housing unit. *Id.* at 5. At no point during her assessments of Whitlock did Nurse Ivers observe any serious injuries or anything that required medical attention or a referral to a provider. *Id.*

In his response, Whitlock does not dispute any of the material facts alleged by Nurse Ivers. Specifically, Whitlock agrees Nurse Ivers assessed him and checked his vital signs and oxygen levels, but nevertheless states she "never check plaintiff for any injuries." ECF 118 at 4. Whitlock does not cite any evidence or provide any explanation

11

for why he believes Nurse Ivers did not check him for any injuries. He seems to argue Nurse Ivers should have performed a more comprehensive examination, but this amounts to a mere disagreement with a medical professional. *See Ciarpaglini*, 352 F.3d at 331 (a mere disagreement with medical professionals does not amount to an Eighth Amendment violation.). It's undisputed Nurse Ivers took Whitlock's blood pressure, checked his vital signs, and used a stethoscope to listen to his lungs before concluding he did not have any serious injuries that required treatment, and Whitlock provides no evidence this assessment was inadequate, violated any standard of care, or was otherwise "plainly inappropriate." *See Hayes*, 546 F.3d at 524. Because there's no evidence by which a reasonable jury could conclude Nurse Ivers' September 26 assessment was constitutionally inadequate, summary judgment is warranted in her favor on this claim.

For these reasons, the court:

(1) GRANTS Nurse Ivers' motion for summary judgment (ECF 107);

(2) GRANTS the state defendants' motion for summary judgment (ECF 111) as to Whitlock's claim against Officer Shupperd and Officer Jameson but DENIES the motion as to Whitlock's claim against Sgt. Ornelas, Lt. Beane, and Officer Benjamin;

(3) DISMISSES Nurse Ivers, Officer Shupperd, and Officer Jameson from this action; and

(4) REMINDS the parties this case is now proceeding only on Whitlock's remaining claim against Sgt. Ornelas, Lt. Beane, and Officer Benjamin in their

individual capacities for monetary damages for using excessive force against Whitlock on September 26, 2021.

SO ORDERED on July 10, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT